UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD P. BERNSTEIN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>KEMPER INDEPENDENCE INSURANCE COMPANY,<br><br>Defendant. | No. 2:20-cv-02517-DAD-JDP<br><br><u>TENTATIVE PRETRIAL ORDER</u> |

On April 16, 2024, the court conducted a final pretrial conference in this case. Attorney Joseph A. Welch appeared as counsel for plaintiffs; attorney Theona Zhordania appeared as counsel for defendant. Having considered the parties' joint pretrial statement and the views of the parties as expressed at the conference, the court issues this tentative pretrial order.

Plaintiffs Richard P. Bernstein and Leah Ann Alcazar bring this action against defendant Kemper Independence Insurance Company, alleging a single breach of contract claim arising from a broken drainage pipe that released water under plaintiffs' residence.

I. <u>JURISDICTION/VENUE</u>

Jurisdiction is predicated on 28 U.S.C. §§ 1332, 1441. Jurisdiction is not contested.

Venue is proper pursuant to 28 U.S.C. § 1441. Venue is not contested.

II. <u>JURY</u>

Both parties have demanded a jury trial. The jury will consist of eight jurors.

III.  UNDISPUTED FACTS

1. Plaintiffs own a single-family home located at 5211 Bellwood Way, Carmichael, California 95608.

2. From February 4, 2019 through February 4, 2020, the property was insured under a policy issued by defendant ("the Policy").

3. The Policy was not modified, and there are no issues regarding the validity of that contract nor waiver or estoppel.

4. On or about December 24, 2019, plaintiffs submitted an insurance claim for property damage to defendant.

5. Photos have been taken by both defendant's and plaintiffs' experts.

6. On January 9, 2020, defendant sent plaintiffs a letter denying coverage for the claim, stating: "The Policy does not provide coverage for this loss because your policy excludes coverage for settling."

7. Defendant's January 9, 2020 letter stated that:

> we do not insure loss: . . . 2. Caused by . . . e) Any of the following . . . 3) . . . corrosion . . . ; . . . 6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings . . . .

8. The Policy states: "We do not insure, however, for loss: . . . 3. Caused by . . . e) any of the following . . . 3) . . . corrosion . . . 6) Settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs or ceilings."

9. Plaintiffs have not repaired or replaced any damage that plaintiffs contend was caused by the drainpipe leak.

10. Plaintiffs have not incurred any costs for building code upgrades due to any damage that plaintiffs contend was caused by the drainpipe leak.

IV.  DISPUTED FACTUAL ISSUES

1. Whether the cause of the damage to plaintiffs' home is related to the broken sanitary sewer line in the crawl space under the home, where the washing machine drains.

2. Whether the drainpipe leak was caused by corrosion.

3. Whether the water was discharged into the underlying soil beneath the structure.

4. Whether desiccation cracks throughout the soil beneath the building indicated that upper soil within the majority of the building area was saturated or nearly saturated at some time.

5. Whether elevated moisture content caused the soil to expand, resulting in vertical movement of the pier grade beam and exterior stem wall foundation.

6. Whether this movement impacted interior and exterior finishes, resulting in cracks in drywall, ceramic countertops, and glass blocks.

7. Whether there were cracks in the foundation walls.

8. Whether this movement loosened connections associated with the wood floor substrate.

9. Whether the presence of moisture caused the wood floor to buckle in the coat closet adjacent to the living room.

10. Whether the damage to the home was the result of non-uniform long-term soil settlement.

11. Whether plaintiff Alcazar described the damage she noticed in early fall 2019 as follows:

> Door out of alignment with door frame in laundry room; Upper cabinets separating from wall in laundry room; Floor tiles lifting and uneven in front entryway and guest powder room; Door out of alignment with door frame in formal living room; Separation of two walls at upper corner where walls meet in formal dining room; Unevenness in flooring in kitchen and family room dining area; Cracks in counter tile between kitchen and family room dining room area; Cracks in ceiling and wall sheetrock in family room dining area; Cracks in ceiling sheetrock around skylights in family room dining area; Cracks at wall/ceiling seams in family room; Separation/space between baseboards and flooring in family room and family room dining area; Cracks in glass bricks which form exterior wall in master bath; Cracks in counter tile in master bath.

12. Whether the broken drainpipe was replaced in March 2020.

13. Whether Gary Watts, an employee of defendant, sent a letter to plaintiffs on July 17, 2020 that stated:

/////

/////

3

> The Policy also states: When the Elite or Ultimate Coverage Endorsement is attached, the endorsement is changed as follows: Paragraph 3.d is deleted and replaced by the following: [']( d). Constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.[']

14. Whether the Policy also states:

> If any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, <u>we cover loss caused by the water</u> including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance.

15. Whether photos were taken by witnesses.

16. Whether desiccation cracks formed and shrinkage of the soil occurred, resulting in re-alignment of foundation and support structures.

17. Whether the Policy covers the damages incurred.

18. The cost of repairs (monetary value of the repairs).

19. The living expenses plaintiffs incurred as a result of the damage to plaintiff's home.

V.  DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE

The parties have not yet filed motions *in limine*. The court does not encourage the filing of motions *in limine* unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial. The parties anticipate filing the motions *in limine* listed below. Any motions *in limine* counsel elects to file shall be filed no later than **21 days before trial**. Opposition shall be filed no later than **14 days before trial** and any replies shall be filed no later than **10 days before trial**. Upon receipt of any opposition briefs, the court will notify the parties if it will hear argument on any motions *in limine* prior to the first day of trial.

Plaintiffs' Motions *in Limine*

1. Motion to exclude witnesses from the courtroom.

4

Defendant's Motions *in Limine*

1. Motion to exclude evidence regarding building code upgrades.
2. Motion to exclude testimony and evidence regarding replacement cost estimates.
3. Motion to exclude Anthony Staiti's estimates dated 2023 and 2024.
4. Motion to preclude Dean Alexander from testifying as to certain facts.
5. Motion to exclude testimony and evidence regarding claims handling.
6. Motion to exclude testimony and evidence regarding any damages that are not recoverable as a matter of law, such as attorney's fees and emotional distress damages and additional living expenses.

## VI. SPECIAL FACTUAL INFORMATION

Pursuant to Local Rule 281(b)(6)(iii), the parties provided special factual information that pertains to this action. That factual information is included above in the undisputed facts section or the disputed facts section, as appropriate.

## VII. RELIEF SOUGHT

1. Plaintiffs seek monetary damages equal to the costs to repair the home as well as additional living expenses so that plaintiffs may maintain their normal standard of living.

## VIII. POINTS OF LAW

The claim asserted in this action arises under state law. Plaintiff's claim is brought against defendant.

1. The elements of, standards for, and burden of proof in a breach of contract claim.
2. The elements of, standards for, and burden of proof in an affirmative defense that plaintiff's insurance policy does not insure for loss caused by corrosion.
3. The elements of, standards for, and burden of proof in an affirmative defense that plaintiff's insurance policy does not insure for loss caused by settling, shrinking, bulging or expansion, including resultant cracking, of foundations, walls, floors, roofs or ceilings.

Trial briefs addressing the points of law implicated by this remaining claim shall be filed with this court no later than **7 days before trial** in accordance with Local Rule 285.

ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

IX.   ABANDONED ISSUES

The parties state that there are no abandoned issues. However, defendant's answer asserts 16 affirmative defenses. Affirmative defenses must be listed either as points of law remaining for trial or as abandoned issues. As discussed at the pretrial conference, in its objections to the tentative pretrial order, defendant shall clarify which of its affirmative defenses have been abandoned and which it intends to pursue at trial.

X.   WITNESSES

Plaintiffs' witnesses shall be those listed in **Attachment A**. Defendant's witnesses shall be those listed in **Attachment B**. Each party may call any witnesses designated by the other.

A.   **The court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

(1)   The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

(2)   The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

B.   Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses by filing a notice on the docket so the court may consider whether the witnesses shall be permitted to testify at trial. The witnesses will not be permitted unless:

(1)   The witness could not reasonably have been discovered prior to the discovery cutoff;

(2)   The court and opposing parties were promptly notified upon discovery of the witness;

      (3)    If time permitted, the party proffered the witness for deposition; and

      (4)    If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

XI.    <u>EXHIBITS, SCHEDULES, AND SUMMARIES</u>

Plaintiff's exhibits are listed in **Attachment C**. Defendant's exhibits are listed in **Attachment D**. No exhibit shall be marked with or entered into evidence under multiple exhibit numbers, and the parties are hereby directed to meet and confer for the purpose of designating joint exhibits and to provide a list of joint exhibits. All exhibits must be pre-marked as discussed below. At trial, joint exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2. Plaintiff's exhibits shall be listed numerically, and defendants' exhibits shall be listed alphabetically.

As discussed at the pretrial conference, the parties have not listed any exhibits as joint, but it appears that there may be some overlap among the parties' exhibits, which is not allowed. The parties are directed to meet and confer to ensure that each exhibit is listed only once, as either a plaintiff's exhibit, a defendant's exhibit or a joint exhibit. In addition, it appears that defendant's descriptions are not sufficiently specific as to Exhibits A, B, C, and D. As to these exhibits, defendant has not listed any Bates stamps, any "Kemper production" numbers as with other exhibits, any dates, or any detailed description of the exhibits. Defendant shall provide a more descriptive list in connection with its objections to the tentative pretrial order.

The parties must prepare three (3) separate exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above. Each binder shall have an identification label on the front and spine. The parties must exchange exhibits no later than **28 days before trial**. Any objections to exhibits are due no later than **14 days before trial**. The final exhibits are due **the Thursday before the trial date.** In making any objection, the party is to set forth the grounds for the objection. As to each exhibit which is not objected to, no further foundation will be required for it to be received into evidence, if offered.

**The court does not allow the use of undisclosed exhibits for any purpose, <u>including impeachment or rebuttal</u>, unless they meet the following criteria:**

7

|   |   |   |
|---|---|---|
| A. | | The court will not admit exhibits other than those identified on the exhibit lists referenced above unless: |
|    | (1) | The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or |
|    | (2) | The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph B, below. |
| B. | | Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits by filing a notice on the docket so that the court may consider their admissibility at trial.  The exhibits will not be received unless the proffering party demonstrates: |
|    | (1) | The exhibits could not reasonably have been discovered earlier; |
|    | (2) | The court and the opposing parties were promptly informed of their existence; |
|    | (3) | The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties. |

## XII. DISCOVERY DOCUMENTS

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than **14 days before trial**.

The parties state in their joint pretrial statement that they anticipate using discovery documents at trial, but neither party has listed such documents with specificity.  As discussed at the final pretrial conference, in their objections to the tentative pretrial order, the parties shall each provide their respective lists of the discovery documents they intend to use at trial, including any discovery documents that they intend to use for impeachment purposes.

/////

/////

XIII.   FURTHER DISCOVERY OR MOTIONS

None.  Discovery and law and motion are closed under the scheduling order issued in this case.

Defendant requests permission to file a motion for summary judgment regarding the Policy's coverage, which defendant contends would eliminate the need for trial.  Defendant's request is denied, good cause for the reopening of law and motion practice having not been shown.

XIV.   STIPULATIONS

None.

XV.   AMENDMENTS/DISMISSALS

None.

XVI.   SETTLEMENT

The parties have not yet participated in a court-ordered settlement conference.  Plaintiffs believe a settlement conference may be useful in bringing this matter to resolution, while defendant does not.  Nevertheless, it is the undersigned's practice to require parties to participate in a settlement conference before proceeding to trial.

Accordingly, the court will refer this case to the assigned magistrate judge for the setting of a settlement conference prior to the trial of this case.  The parties are directed to contact Magistrate Judge Peterson's chambers to arrange for a settlement conference to be held prior to the scheduled trial date.  Depending on the assigned magistrate judge's settlement conference procedures, the assigned magistrate judge may hold the settlement conference or may arrange for a different magistrate judge to hold the settlement conference.

XVII.   JOINT STATEMENT OF THE CASE

The parties have not provided an agreed-upon neutral statement of the case as required by the Standing Order (Doc. No. 20).  The parties shall meet and confer and file a joint neutral statement of the case to be read to the prospective jurors within **fourteen (14) days** from the date of entry of this order.

/////

XVIII. <u>SEPARATE TRIAL OF ISSUES</u>

None.

XIX. <u>IMPARTIAL EXPERTS/LIMITATION OF EXPERTS</u>

None.

XX. <u>ATTORNEYS' FEES</u>

Plaintiffs will seek attorneys' fees and costs if they prevail.

XXI. <u>TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS</u>

None.

XXII. <u>MISCELLANEOUS</u>

None.

XXIII. <u>ESTIMATED TIME OF TRIAL/TRIAL DATE</u>

Jury trial is scheduled for **June 24, 2024**, at 9:00 a.m. in Courtroom 4 before the Honorable Dale A. Drozd.  Trial is anticipated to last 4–5 court days.  The parties are directed to Judge Drozd's Standing Order in Civil Actions, available on his webpage on the court's website.

Counsel are directed to contact Pete Buzo, courtroom deputy, at (916) 930-4016, no later than one week prior to trial to ascertain the status of the trial date.

XXIV. <u>PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS</u>

The parties shall file any proposed jury *voir dire* **7 days before trial**.  Each party will be limited to fifteen minutes of supplemental jury *voir dire*.

The court directs counsel to meet and confer in an attempt to generate a joint set of jury instructions and verdicts.  The parties shall file any such joint set of instructions **14 days before trial**, identified as "Joint Jury Instructions and Verdicts."  To the extent the parties are unable to agree on all or some instructions and verdicts, their respective proposed instructions are due **14 days before trial**.

Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed or disputed, as a Word document to dadorders@caed.uscourts.gov no later than **14 days before trial**; all blanks in form instructions should be completed and all brackets removed.

/////

10

Objections to proposed jury instructions must be filed **7 days before trial**; each objection shall identify the challenged instruction and shall provide a concise explanation of the basis for the objection along with citation of authority.  When applicable, the objecting party shall submit an alternative proposed instruction on the issue or identify which of his or her own proposed instructions covers the subject.

XXV.  TRIAL BRIEFS

As noted above, trial briefs are due **7 days before trial**.

XXVI. OBJECTIONS TO PRETRIAL ORDER

Each party is granted **14 days from the date of entry of this order** to file objections to the same.  Each party is also granted **7 days thereafter** to respond to the other party's objections.  If no objections are filed, the order will become final without further order of this court.

The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure and Local Rule 283 of this court, this order shall control the subsequent course of this action and shall be modified only to prevent manifest injustice.

IT IS SO ORDERED.

Dated:   **April 17, 2024**

DALE A. DROZD
UNITED STATES DISTRICT JUDGE

**ATTACHMENT A**

Plaintiffs' Witness List

1. Richard Bernstein
2. Leah Ann Alcazar
3. Jerry Slinkard
4. Anthony Staiti, Expert
5. Dean Alexander, Expert
6. Lenneth Jamey Kim
7. Andrew Ginzburg
8. Gary Watts

**ATTACHMENT B**

Defendant's Witness List

1. Thomas L. Read
2. Matthew Stiefel
3. G. Clay Mitchel
4. George A. McClusky
5. Van Fisher
6. Mike Nelson, Custodian of records for Eagle Lift

# ATTACHMENT C

Plaintiffs' Exhibit List

1. Kemper Insurance Policy RB858731 issued to plaintiffs (Kemper production (KP) KP 367-459)
2. Kim photos (Kemper produced KP 1–35)
3. Envista photos (Kemper produced KP 148–165)
4. Envista Floor Plan with Damage Observations (KP 173)
5. Kemper letter January 9, 2020 denying coverage.  (KP 202–207)
6. Kemper letter August 5, 2020 denying coverage.  (KP 251–253)
7. Wardlaw Claims Service Loss Report (KP 251–253)
8. JLS Consulting Inspection of Damage letter February 17, 2020 (KP 300)
9. Envista Report July 31, 2020 (KP 305–337)
10. Photos (KP 347–359)
11. Transcript of V/M from Kim to Watts January 7, 2020 (KP 363)
12. Kemper internal e-mail May 27, 2020 (KP 250)
13. Staiti Inspection photos Nov 2019
14. Staiti Estimate of Repairs
15. Expert Witness Report of Dean Alexander of Krazan and Associates Inc.
16. Expert Witness Report of Anthony Staiti of IC Construction
17. Expert Witness Report of Bert Howe & Associates Inc.
18. Expert Witness Report of Clay Mitchell of NCA, Inc.
19. Expert Witness Report of Thomas L. Read
20. Rebuttal Report of Dean Alexander
21. Rebuttal Report of Anthony Staiti
22. Rebuttal Report of Clay Mitchell
23. Rebuttal Report of Bert Howe
24. Kemper letter dated July 17, 2020

**ATTACHMENT D**

Defendant's Exhibit List

A. Kemper Policy

B. Photographs taken by Matt Stiefel

C. Photographs taken by Clay Mitchel

D. Photographs taken by Thomas L. Read

E. July 31, 2020 Envista Report prepared by George McCluskey

F. March 17, 2020 EageLift Foundation Assessment Report prepared by Mike Nelson

G. Photo Sheets (KEMPER 000001–35)

H. Photo Sheets (KEMPER 000104–139)

I. Photo Sheets (KEMPER 000212–247)

J. Photo Sheets (KEMPER 000263–298)

K. Photos (KEMPER 000346–359)